**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JEFFREY WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:12-cv-348** |
| | § | |
| **UNITED STATES PARCEL SERVICE,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

## MEMORANDUM AND ORDER

---

Pending before the Court is Defendant United States Parcel Service, Inc.'s Motion for Summary Judgment. (Doc. No. 18.) After considering the motions, all responses and replies thereto, and the applicable law, the Court concludes that Defendant's Motion for Summary Judgment must be **GRANTED**.

### I.    BACKGROUND

Plaintiff Jeffrey Williams ("Williams") alleges that Defendant United Parcel Service ("UPS") discriminated against him because of his race (African American) and retaliated against him for engaging in union activity.

Williams was employed in UPS's small package operation in Stafford, Texas. (Doc. No. 18, Ex. A, *hereinafter* "Russell" declaration, ¶ 5.) Williams first started at UPS around 1985 and eventually became a package car driver. (Doc. No. 18 p. 6 ¶ 7.) Like all UPS drivers in the metropolitan Houston area and throughout south Texas, Williams was represented by the International Brotherhood of Teamsters ("IBT") Local 988, a union. (*Id.* at p. 5 ¶ 3.) The collective bargaining agreement covering these drivers and most

other UPS hourly employees is the National Master UPS Agreement and Southern Region Supplemental Agreement (the "CBA"). (*Id.* at p. 1.) The CBA between UPS and IBT contains wages, hours, terms, and conditions of employment for UPS drivers. (Russell ¶ 6-8.) Article 51 of the CBA is a multi-step grievance procedure for resolution of disputes under the CBA, including disputes involving discipline and discharge. (Russell ¶¶ 6-8.) There are four steps in the procedure, and resolution at any one step is final and binding on the parties.

1. First step: This is referred to as Local Hearing. It takes place within the district. UPS Labor Management, representatives of IBT Local 988, and the grievant meet to discuss the grievance and the possibility of resolving it.

2. Second step: This is the Southern Region Area Parcel Grievance Committee ("SRAPGC") Regular Panel. At this stage, an equal number of Teamsters representatives, UPS labor managers from local unions and UPS districts that are not party to eh grievance, conduct an evidentiary hearing. The grievant has a right to be present, is represented by his/her local union, and the grievant may testify. A majority decision by members of the SRAPGC is final and binding.

3. Third step: This is the SRAPGC Deadlock committee. Grievances that are not resolved at step two are presented to a separate panel of Teamsters and UPS representatives. The prior evidence and any additional evidence is presented and a majority decision is final and binding.

4. Fourth step: If grievances remain deadlocked, the final step is arbitration of disputes before the Federal Mediation and Conciliation Service ("FMCS").

(Doc. No. 18 p. 5.)

Williams's route in 2011 was a business and residential route. (Doc. No. 18, Ex. B, *hereinafter* "Williams" declaration, p. 83.) One customer, Electronics Custom Distributors ("ECD"), was on Williams's route. ECD is a distributor of stereos, televisions, and other home entertainment products, and was a large and regular UPS customer. (Doc. No. 18 p. 6 ¶ 10.) In August 2011, ECD reported to UPS that Williams

damaged a cart on the company's loading dock and mishandled packages being shipped by ECD. Williams had been trained to handle customer packages with "hand-to-surface" care, which means carrying packages with hands and placing them on a surface. (Williams pp. 92-93.) ECD produced video surveillance from three days in August 2011 when Williams performed package pick ups. (Doc. No. 18 p. 6 ¶ 11.) A video from August 8 shows Williams pushing a cart full of ECF packages in such a way that it rolled off the dock and fell downward into the package car. The car was not level with the dock so the packages fell a distance into the car. (*Id.* at p. 7 ¶ 12.) The video footage from August 15 and 16 show Williams tossing packages from a dolly onto the back of the package car. (Williams pp. 106-08.) All three video footages show Williams violating the proper hand-to-surface method of moving packages.

On August 19, 2011, a disciplinary meeting was held with Williams. (Williams p. 110.) Present were Williams's Local 988 representative, UPS's Loss Prevention Manager Craig Patterson ("Patterson"), and Stafford Center Manager John Gatewood ("Gatewood"). (*Id.* at pp. 110-11.) During the disciplinary meeting, Patterson showed Williams the video and gave him the opportunity to resign. Williams declined and UPS discharged him for unprofessional conduct – mishandling packages. (Doc. No. 18, Ex. 6.)

After his discharge, Williams filed a grievance with IBT Local 988. (Williams p. 120.) The grievance stated that Williams thought his "termination was unjust and extremely harsh considering the circumstances." (Doc. No. 18, Ex. 7.) The grievance did not mention that Williams felt his discharge was based on his race or that it was retaliatory. (*Id.*) UPS and Williams had a Local Hearing in September 2011. (Williams pp. 125-28; Russell ¶¶ 17-18.) At the hearing, District Labor Manager Russell offered to

return Williams to work immediately with a time-served suspension. (Russell ¶ 17.) Williams declined. (Williams pp. 24-25, 140.)

Because Williams declined the offer, the grievance was placed on the agenda of SRAPGC Regular Panel for September 2011. (Williams pp. 133-34; Russell ¶ 19.) The SRAPGC Regular Panel deadlocked and Williams's grievance was advanced to the next step of the grievance procedure, the SRAPGC Deadlock Panel. (Doc. No. 19 p. 8 ¶ 20.) This third step also reached an impasse. (*Id.* at p. 8 ¶ 21.) The grievance then went to the final step: arbitration. The matter was arbitrated in July 2012. (*Id.* at p. 8 ¶ 22.) The arbiter found that Williams and Local 988's procedural challenge to the grievance process was improper and denied Williams's request for back pay and benefits. (*Id.*) By post-arbitration agreement with IBT Local 988, UPS and Williams, Williams returned to work as a package car driver at UPS without loss of seniority. Williams did not receive back pay or back benefits. (*Id.* at p. 9 ¶ 25.)

Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EOC") in December 2011. (Doc. No. 18, Ex. 9.) The EEOC dismissed and issued a Notice of Right to Sue two weeks later. (Doc. No. 18, Ex. 10.) Williams then filed this suit alleging race discrimination and retaliation.

## II.    LEGAL STANDARD

### A.  Summary Judgment

The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(a). Summary judgment is proper when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2011) (internal quotations omitted). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248).

Conclusory allegations and unsubstantiated assertions do not satisfy the non-movant's summary judgment burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."). "Nor may non-movants rest upon mere allegations made in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial." *Topalian*, 954 F.2d at 1131. To meet this burden, the nonmovant must "identify specific evidence in

the record and articulate the precise manner in which that evidence support[s][its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotation omitted).

## B.  Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on the individual's race. Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the Title VII claims lack direct evidence of discrimination, they will be analyzed according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. To meet this burden, the plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) others outside the protected group were treated more favorably. *Id.* If the plaintiff succeeds in making the *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *Id*. If the defendant offers a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

### III.   ANALYSIS

### A.  Title VII Discrimination Claim

To make a *prima facie* case of race discrimination, Williams must show (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside of his protected class or similarly situated employees outside his protected class were treated more favorably. *Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007). UPS argues that Williams's Title VII claim fails because he cannot make a *prima facie* case of race discrimination. Specifically, UPS argues that Williams cannot prove that it hired or promoted anyone to take his route. Williams responds that he suffered disparate treatment because his Caucasian counterparts were treated more favorably than he was. To establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to [ ] [another] employee under 'nearly identical' circumstances"; that is, "'that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by ... [other] employee[s].'" *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (citation omitted). The Fifth Circuit has held an exacting standard for "similarly situated" under Title VII:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The misconduct at issue is a violation of UPS's hand-to-surface procedure. At his deposition, Williams admitted

that, to his knowledge, no one engaged in nearly identical misconduct. (Williams p. 110: 7-10.) In Williams's response to the motion, he mentions Curtis Picard ("Picard") as a comparator. UPS claims this is the first time Williams has mentioned this comparator. UPS objects to Picard as a comparator because the record contains no sworn testimony from Picard, and Williams does not identify any basis for personal knowledge. Furthermore, UPS claims there is no evidence regarding Picard in the summary judgment record. Even assuming that Picard is in the summary judgment record, Williams has not shown that Picard engaged in "identical" behavior. Williams states that Picard called an African-American woman the "N" word in his delivery area. (Doc. No. 19 p. 7.) This is not the same conduct as violating a delivery procedure and does not meet the standard for "identical" circumstances.

Williams has not made a *prima facie* case of race discrimination. Therefore, summary judgment on the race discrimination claim must be granted in favor of UPS.

### B.  Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, Williams must show that (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). UPS argues that Williams has not established a *prima facie* case of retaliation and the Court agrees.

Williams fails to establish the first prong of a retaliation claim, that he participated in activity protected by Title VII. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying,

assisting, or participating in any investigation, proceeding, or hearing under Title VII."
*Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (*citing Green v.
Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002). The
Fifth Circuit has held that Title VII protects only opposition to discrimination based on
"race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Magic words
are not required, but protected opposition must at least alert an employer to the
employee's reasonable belief that unlawful discrimination is at issue."  *Brown v. United
Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010). In his deposition, Williams
stated that he never claimed that his discharge was the result of race discrimination in any
of the four steps of the grievance procedure. (Williams p. 149.) In Williams's response to
the motion, he also fails to allege that his activity related to "race, color, religion, sex, or
national origin." 42 U.S.C. § 2000e–2(a)(1). Williams has not made a *prima facie*
showing of retaliation.

Furthermore, it appears that the retaliation claim is based on union activity. If in
fact the retaliation is for union activity, this would be an unfair labor practice claim
within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").
National Labor Relations Act § 10, 29 U.S.C. § 160. *See Golden State Transit Corp. v.
City of Los Angeles*, 493 U.S. 103, 108 (1989) (The National Labor Relations Board "has
exclusive jurisdiction to prevent and remedy unfair labor practices by employers and
unions.").  However, there are exceptions to the NLRB's exclusive jurisdiction. The
Supreme Court has held that exclusive jurisdiction by the NLRB does not preclude a §
1983 action based on governmental interference with labor and management rights. *Id.*,
493 U.S. 103 (1989) (holding that existence of a comprehensive enforcement scheme

including exclusive jurisdiction by the National Labor Relations Board to prevent and remedy unfair labor practices by employers and unions did not preclude a § 1983 action based on governmental interference with labor and management rights.) Williams has not alleged a § 1983 claim in this case so there is no exception to the NLRB's exclusive jurisdiction. Therefore, the district court would not have subject matter jurisdiction if Plaintiff is alleging retaliation for union activity.

### IV.     CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 8th day of April, 2013.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**

10